1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4                            )
    UNITED STATES OF AMERICA, ) CR 10-310-RAJ
5                            )
                 Plaintiff,  ) SEATTLE, WASHINGTON
6                            )
    v.                       ) August 2, 2011
7                            )
    FREDERICK DARREN BERG,   ) Change of Plea
8                            ) Hearing
                 Defendant.  )
9   _____

10            VERBATIM REPORT OF PROCEEDINGS
11     BEFORE THE HONORABLE RICARDO S. MARTINEZ
              UNITED STATES DISTRICT JUDGE
12  _____

13

14  APPEARANCES:

15

16

17    For the Plaintiff:     Norman Barbosa
                             Assistant United States Attorney
18                           700 Stewart Street
                             Suite 5220
19                           Seattle, WA  98101

20

21    For the Defendant:     Russell M. Aoki
                             720 Olive Way, Suite 1522
22                           Seattle, WA  98101
                             and
23                           Michael C. Nance
                             615 2nd Avenue, Suite 760
24                           Penthouse Suite
                             Seattle, WA  98104

25

1    THE CLERK:  This is the matter of the United States

2    versus Frederick Darren Berg, case No. CR 10-310 assigned to

3    Judge Richard Jones.  Will counsel please make their

4    appearances for the record?

5    MR. BARBOSA:  Norman Barbosa on behalf of the United

6    States.

7    THE COURT:  Mr. Barbosa.  Thank you.

8    MR. NANCE:  Good afternoon, Your Honor, Michael Nance

9    and Russell Aoki for Frederick Darren Berg.

10    MR. AOKI:  Good afternoon, Your Honor.

11    THE COURT:  Mr. Aoki, Mr. Nance.  Thank you.

12    Mr. Berg, good afternoon.

13    THE DEFENDANT:  Good afternoon, sir.

14    THE COURT:  Mr. Berg, you and I don't know each

15    other.  I am one of the district judges of the court.  I have

16    had a chance to review a draft copy of a proposed plea

17    agreement.  My understanding is that you have decided, after

18    consultation with your counsel and discussions with the

19    government, to go ahead and waive certain rights and enter

20    pleas of guilty to certain federal felony offenses.  Am I

21    correct?

22    THE DEFENDANT:  That's correct.

23    THE COURT:  I am assuming that you reviewed this

24    carefully with your counsel?

25    THE DEFENDANT:  Yes, I have.

1      THE COURT:  Now, you don't know this, you have no way

2  of knowing this, but Mr. Nance and Mr. Aoki have practiced in

3  front of me for years.  They are two of the most competent

4  criminal defense attorneys that I know.  However, they cannot

5  decide for you whether you wish to enter pleas of guilty.

6  That is a decision that only you can make.

7      THE DEFENDANT:  I understand.

8      THE COURT:  They're here only to give you advice, to

9  make a recommendation.  Ultimately it's got to be your

10  choice.  Is this your choice?

11      THE DEFENDANT:  It is.

12      THE COURT:  All right.  Let me tell you how we will

13  proceed, what my job is, and what I need from you.

14    We need to make a full and complete record of all of this.

15  I will go through the plea agreement in its entirety just to

16  make sure you understand every portion of it and are able to

17  answer any questions that you have about any of it as we go

18  through it.  If at any point in time you have any question

19  for either your counsel, government counsel, or myself,

20  please don't hesitate to ask.  All right?

21    We do this, as I said, on the record.  And we also do this

22  under oath, which means we will swear you in, your responses

23  to the court's questions will be sworn responses.  And that

24  means that if you were to materially misrepresent something,

25  or perhaps even make false statements or perjure yourself,

1  that those statements could be used in the future by the

2  government for further prosecution of either perjury or

3  making a false statement.  Do you understand?

4          THE DEFENDANT:  I do, Your Honor.

5          THE COURT:  All right.  And I know it may seem

6  redundant, but as I indicated, you and I have not seen each

7  other, we don't know each other, and my job is to make sure

8  that you understand fully and completely what you're charged

9  with, what you're pleading to, the rights you give up by

10  pleading guilty, and most importantly, the consequences of

11  the plea of guilty.  Then it's up to you to make that

12  ultimate determination.  All right?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  Let me have you stand, raise

15  your right hand, pay attention to the oath.

16                  FREDERICK DARREN BERG

17      Having been sworn under oath, testified as follows:

18                       EXAMINATION

19  BY THE COURT:

20  Q   Let me ask only background questions about you.  Is

21  Frederick Darren Berg your true and correct name?

22  A   Yes.

23  Q   Tell me what your date of birth is.

24  A   May 17, 1962.

25  Q   In terms of education, how far did you get in school?

1    A    Two years in college.

2    Q    I assume you can read and write in English?

3    A    Yes.

4    Q    Have you had a chance to read this agreement for yourself?

5    A    Yes.

6    Q    Have you gone over it carefully with your counsel?

7    A    Yes.

8    Q    Do you feel you understand everything that it contains?

9    A    Yes.

10   Q    Have you ever been treated for any type of mental illness

11   or addiction to narcotic drugs?

12   A    No.

13   Q    Are you currently taking any type of drug, any medication,

14   any prescribed medicine, any alcohol, anything that would in

15   any way impact your ability to follow along and understand

16   what's in the plea agreement and our discussion right now?

17   A    No.

18   Q    All right.  You have a copy of the plea agreement in front

19   of you?

20   A    I do.

21   Q    As I indicated, I need to go over it carefully.  So if you

22   would look at page 1, paragraph 1.  Under that section it

23   talks about the charges, says:  Defendant, having been

24   advised of the right to have this matter tried before a jury,

25   agrees to waive that right and enter a plea of guilty to the

1  following charges contained in the superseding indictment;

2  (a) wire fraud as charged in Count 9, that's a violation of

3  Title 18 United States Code Section 1343; (b) money

4  laundering as charged in Count 11 of that indictment, again,

5  Title 18 Section 1957; and finally (c) bankruptcy fraud,

6  asset concealment as charged in Count 12, again, violation of

7  Title 18 Section 152(1) of the United States Code.  You

8  understand, first of all, that those are the counts you are

9  pleading guilty to?

10  A   Yes.

11  Q   I'm assuming that the remaining counts in the indictment,

12  or it's your understanding the remaining counts in the

13  indictment will be dismissed at the time of sentencing?

14  A   That's my understanding.

15  Q   Take a look at paragraph 2.  Every criminal offense is

16  made up of certain elements.  Those are the things the

17  government bears the burden of proving beyond any reasonable

18  doubt to a jury of your peers in order for them to be able to

19  get a conviction for the charge that they bring.  These are

20  the elements for these offenses.

21       For wire fraud, first, the defendant made up a scheme

22  or plan for obtaining money or property by making false

23  promises or statements; secondly, the defendant knew the

24  promises or statements were false; third, the promises or

25  statements were material, that is, they would reasonably

1    influence a person to part with money or property; fourth,

2    the defendant acted with the intent to defraud; and finally

3    fifth, the defendant used or caused to be used the wires in

4    interstate or foreign commerce to carry out or attempt to

5    carry out an essential part of the scheme.

6          Now, the elements of money laundering.  First, the

7    defendant engages or attempts to engage in a monetary

8    transaction; secondly, the monetary transaction involves

9    criminally-derived property; third, the value of the

10   criminally-derived property exceeds $10,000; fourth, the

11   property is derived from specified unlawful activity; fifth,

12   the defendant knows that the property is criminally derived.

13         And finally the elements of bankruptcy fraud, asset

14   concealment.  First, a bankruptcy case was pending on or

15   about July 27, 2010 in which the defendant was the debtor;

16   second, that the property the defendant concealed as alleged

17   in the superseding indictment was part of the bankruptcy

18   estate of the debtor; third, the defendant concealed the

19   property alleged in the superseding indictment from the

20   trustee charged with the custody and control of that

21   property; and finally fourth, that defendant acted knowingly

22   and with the intent to defraud.

23         Those are the elements of these three separate felony

24   offenses.  Do you understand the elements?

25   A    I do.

1   Q   Do you have any questions at all about this entire
2   paragraph?
3   A   I don't.
4   Q   Take a look at paragraph 3.  It talks about the penalties.
5   Now here we're talking about the statutory penalties for
6   these offenses.  This is what Congress has set out.
7          For Count 9, wire fraud, it can be imprisonment for up
8   to 20 years, a fine of a quarter million dollars.  The period
9   of supervised release of up to three years.  And there are
10  mandatory special assessments of $100 per felony offense.
11         For Count 11, money laundering, up to ten years of
12  imprisonment.  Again, quarter million-dollar fine, three
13  years of supervised release, and statutory special assessment
14  of $100.
15         And finally for Count 12, the bankruptcy fraud,
16  imprisonment for up to five years, quarter million-dollar
17  fine, three years supervised release, and $100 special
18  assessment.
19         It says you understand and agree that the special
20  assessment shall be paid at or before the time of sentencing.
21  You also understand that the supervised release is a period
22  of time following imprisonment during which you would be
23  subject to certain restrictions and requirements as set out
24  by the trial court, by the sentencing court.  It says you
25  further understand that if that is imposed and you violate

1    one or more of those conditions, and the court finds you in

2    violation, you could be returned to prison for all or part of

3    the term of supervised release that was originally imposed.

4    And that could result in you serving a total term of

5    imprisonment greater than the statutory maximum.

6         It says you understand, in addition to any term of

7    imprisonment and/or fine, the court may order you to pay

8    restitution to any victims.  You also understand that as a

9    consequence of pleading guilty, that may include the

10   forfeiture of property, specified property as a part of the

11   sentence as imposed by the court, or as a result of another

12   civil judicial or administrative process.

13        It says you agree that any monetary penalties that are

14   imposed are due and payable immediately.  You agree to submit

15   a completed financial statement-of-debtor form if that's

16   requested by the U.S. Attorney's Office.

17        Any questions about anything in paragraph 3, the

18   statutory penalties?

19   A    No questions.

20   Q    Take a look at paragraph 4.  Paragraph 4 contains the

21   rights that are waived by pleading guilty.  You are not

22   unique.  Every criminal defendant has the same exact rights.

23   Every criminal defendant that enters a plea of guilty waives

24   these very same exact rights.  Let me go over them.  I'll ask

25   you if understand them.  I'll ask you if you have any

1    questions about any of them.

2         By asking the court to accept your plea you are

3    knowingly and voluntarily giving up:  (A) The right to plead

4    not guilty, to persist in that not guilty plea.  (B)  The

5    right to a speedy and public trial before a jury of your

6    peers.  (C)  The right to the effective assistance of counsel

7    at that trial, including if you cannot afford counsel, the

8    right to have the court appoint counsel for you.  (D)  You

9    give up the right to be presumed innocent until guilt has

10   been established beyond any reasonable doubt.

11        (E)  The right to confront and cross examine witnesses

12   that might be called against you at that trial.  (F)  The

13   right to compel or subpoena witnesses to appear on your

14   behalf at trial.  (G) The right to testify yourself or to

15   remain silent at trial.  And if you did choose to remain

16   silent, that silence could not be used against you.  And

17   finally:  (H) The right to appeal a finding of guilt or any

18   pre-trial rulings made by the court.  Do you understand each

19   of those rights?

20   A    Yes.

21   Q    Do you understand that by pleading guilty you waive each

22   of those rights?

23   A    Yes.

24   Q    Take a look at paragraph 5.  It talks about the U.S.

25   Sentencing Guidelines.  It says you understand and

1  acknowledge that at the time of sentencing the court must

2  consider the guideline range as established by the United

3  States Sentencing Commission, together with all the other

4  factors set out in Title 18 Section 3553(a).

5       And that includes the nature and circumstances of the

6  offense; the history and characteristics of the defendant --

7  that's you -- the need for the sentence to reflect the

8  seriousness of the offense, to promote respect for the law,

9  and to provide just punishment for the offense; the need for

10 the sentence to afford adequate deterrence to criminal

11 conduct; the need for the sentence to protect the public from

12 further crimes of the defendant; the need to provide the

13 defendant with educational and vocational training and

14 medical care, or other correctional treatment in the most

15 effective manner; the kinds of sentences available; the need

16 to provide any restitution to victims; and, finally, the need

17 to avoid any unwarranted sentence disparity amongst

18 defendants involved in similar conduct with similar records.

19      It says you also acknowledge and understand the court

20 will determine your applicable guideline range at the time of

21 sentence; and, except as provided in paragraph 8 below, that

22 you may not withdraw a guilty plea solely because of the

23 sentence imposed by the court.

24      Now, I want to make sure you understand the way this

25 works.  This plea is specifically under 11(c)(1)(C).  To us

1   that means something very specific.  And I know that your

2   attorneys have explained what that means to you.  And that is

3   that even though the court must consider all of these things,

4   in this particular case the sentencing court, should it

5   choose to accept the plea agreement, is being bound by that

6   agreement has no choice.  Because -- well, I take that back.

7   The court has a choice, and the choice is not to accept it.

8   If it's not accepted, then at that point you and the

9   government are free to withdraw from the plea agreement

10  entirely, go back to square zero.  Do you understand?

11  A   I do.

12  Q   Look at paragraph 6 page 5, it talks about restitution.

13  It says you shall make restitution in an amount to be

14  determined by the court at the time of sentencing.  And,

15  again, as we decided earlier, that amount is to be due and

16  payable immediately.  But obviously, depending upon how much

17  it is, may be paid in accordance with a schedule of payments

18  as proposed by U.S. Probation.  Any questions about paragraph

19  6?

20  A   No, Your Honor.

21  Q   Take a look at paragraph 7.  This is the parties'

22  statement of facts.  It says, the parties agree to the

23  following facts, and it is these facts that make you guilty

24  of the charged offenses.  What I'm going to do is read the

25  statement of facts and ask if you accept those facts.  If you

1    have any questions about any of this at the end, please ask,

2    all right?

3              It says, "beginning at an exact time unknown, but

4    sometime within the last ten years, and continuing until in

5    or around August 2010, at Seattle and elsewhere, within the

6    Western District of Washington, Frederick Darren Berg did

7    knowingly and willfully devise and execute a scheme and

8    artifice to defraud, and for obtaining money and property by

9    means of material false and fraudulent pretenses,

10   representations, and promises; and in executing or attempting

11   to execute this scheme and artifice, did knowingly cause to

12   be transmitted in interstate commerce by means of wire

13   communication, certain signs, signals and sounds.  The object

14   of the scheme and artifice to defraud was to defraud

15   investors by falsely representing that Frederick Darren Berg

16   was using all investor funds to purchase seller-financed real

17   estate contracts, real estate, and mortgage-backed

18   securities, and also to make hard-money loans.  In fact, as

19   he then well knew, during the course of the scheme and

20   artifice to defraud, Frederick Darren Berg stole millions of

21   dollars in investor funds which he used for his own benefit

22   and to pay off the loans of earlier investors in order to

23   conceal his false statements and continue his scheme to

24   defraud.

25             Between January 2001 and August 2010 Berg created and

1    operated a series of investment funds purportedly for the

2    sole purpose of investing and selling financed real estate

3    contracts, hard-money loans, real estate and mortgage backed

4    securities.  Berg exercised exclusive control over the

5    operation of each of the investment funds and was the only

6    person with access to the funds' bank records.  Berg was the

7    sole signatory of the funds' bank accounts and the only

8    person with access to all of the funds' accounting records,

9    including records related to the funds' investors, the funds'

10   assets, and the funds' expenses.

11          Berg caused others to promote the investment funds and

12   raise money from investors based on statements he made

13   regarding the purpose of the funds, how the funds would

14   operate, the types of assets the funds would purchase and

15   hold, and for what purpose the investors' money would be

16   used.

17          It was part of the scheme or artifice to defraud that

18   Berg falsely represented the Meridian Mortgage Investment

19   Funds would use investor money solely to purchase

20   seller-financed real estate contracts, fund short-term loans,

21   purchase real estate and pay management and servicing fees to

22   Frederick M. Berg and its related companies.

23          In the truth, and in fact, as he then well knew, Berg

24   used investors' money for his other business interests,

25   including the creation and operation of a bus company named

1    MTR Western and several subsidiaries as well as his personal

2    expenses.

3         Berg raised over $280 million from approximately 500

4    investors in his investment funds.  As a result of Berg's

5    scheme and artifice to defraud, the victims lost

6    approximately $100 million that he used for his personal

7    benefit and to promote the scheme to defraud.

8         On or about May 10, 2007, within the Western District

9    of Washington, Berg did knowingly engage in a monetary

10   transaction in criminally-derived property of a value greater

11   than $10,000 and derived from specified unlawful activities,

12   namely wire fraud, to wit:  A transfer of $1,000,000 from the

13   Commerce Bank account ending in 2804 of Meridian Partnership

14   Management, Incorporated, to the Commerce Bank account ending

15   in 9601 belonging to Frederick Darren Berg.

16        On or about May 27, 2010, for the purpose of executing

17   the scheme and artifice to defraud and obtain money by means

18   of false and fraudulent pretenses, Berg did knowingly and

19   intentionally cause to be transmitted in interstate commerce

20   by means of a wire communication, a wire transfer of $495,000

21   from the Wells Fargo account of C.B., which represented an

22   investment by C.B. in Meridian Mortgage Investment Fund II,

23   to the Commerce Bank account of MPM Investor Services

24   (FBO MMIDII).  This wire traveled in interstate commerce via

25   the FedWire system in New Jersey to the Western District of

1    Washington.

2         On July 27, 2010, Berg filed a personal bankruptcy

3    petition in the matter of In Re: Frederick Darren Berg, Case

4    No. 10-18668.  This matter was pending through December of

5    2010.  As part of his bankruptcy proceedings, Berg concealed

6    from the bankruptcy court and the Chapter 11 bankruptcy

7    trustee his interest in proceeds from the sale of real

8    property; his ownership of a brokerage account in the name of

9    DB517LLC at TD Ameritrade; and his interest in a limited

10   liability company in the name of DB517LLC.  These assets were

11   all part of the bankruptcy estate.  Berg concealed these

12   assets by failing to disclose these assets on his bankruptcy

13   schedules and making false statements to the Chapter 11

14   bankruptcy trustee about the nature and source of these

15   assets when questioned specifically about these assets.  Berg

16   falsely claimed to the bankruptcy trustee that a portion of

17   the funds identified above constituted post-petition earnings

18   from consulting contracts he entered after he filed

19   bankruptcy.  In truth and in fact, as he then well knew, this

20   money was the proceeds of a sale of real property that Berg

21   completed on July 29, 2010.

22        I've basically read the entire statement of facts.

23   Number one, do you agree with those facts?

24   A   I do.

25   Q   Is that, in effect, what happened?

1    A    Yes.

2    Q    You understand that those facts, then, fulfill the

3    elements of the offenses, the three different felonies that

4    we discussed?

5    A    I do understand that.

6    Q    Take a look at paragraph 8 that deals with sentencing.

7    This particular plea deals with a section of the sentencing

8    statute 11(c)(1)(C) of the Federal Rules of Criminal

9    Procedure.  It says, "The parties acknowledge and agree that

10   the appropriate sentence of imprisonment to be imposed by the

11   court is a term of 216 months and three years of supervised

12   release.  If the sentencing court rejects the agreement of

13   the parties with regard to the appropriate sentence, both the

14   defendant and the United States reserve the right to withdraw

15   from this agreement pursuant to Rule 11(c)(1)(C) of the

16   Federal Rules of Criminal Procedure and to proceed to trial.

17   No other agreement has been made with regard to the

18   imposition of the sentence in this matter, and the parties

19   understand that the court retains full discretion with regard

20   to the imposition of a term of supervised release, the

21   conditions of supervised release, fines, forfeiture or

22   restitution as may be applicable.

23          THE COURT:  Mr. Nance and Mr. Aoki, let me ask a

24   question here.  It says on the top of page 8, that first part

25   of that sentence, that the agreement is 216 months and three

1    years of supervised release.  But then it says in the last

2    sentence that no other agreement has been made and the

3    parties understand the court retains full discretion with

4    regard to the imposition of a term of supervised release.  So

5    what exactly does that mean to the parties?

6              MR. BARBOSA:  Your Honor, I noticed that also.  And I

7    think we should cure that by deleting the words, "A term of

8    supervised release" in line 7.  So that it will say, "Full

9    discretion with regard to the imposition of the conditions of

10   supervised release," if the defendant agrees.

11             THE DEFENDANT:  Yes.

12             MR. NANCE:  We agree.

13             MR. BARBOSA:  We can all initial that.

14             THE COURT:  All right.  So delete line 7 after it

15   says -- delete "imposition of"?

16             MR. BARBOSA:  Just, "A term of supervised release."

17             THE COURT:  Yes.

18   Q   (By the Court)  Mr. Berg, do you understand what we were

19   doing?

20   A   I do.

21   Q   All right.  There was a conflict between the language, at

22   least an apparent conflict to the court, and I wanted to

23   clarify that and also clarify what you understood.  So I am

24   actually crossing that out.

25             And the rest of it is fine.  You agree with it, Mr.

1   Berg?

2   A   I do.

3   Q   Take a look at paragraph 9.  It says, "As part of the plea

4   agreement the United States agrees that it will not oppose

5   the defendant's request for placement at a particular Bureau

6   of Prisons facility.  The U.S. further agrees it will not

7   take a position regarding the defendant's participation in

8   Bureau of Prison's Residential Drug Abuse Treatment Program."

9         What this is saying, basically, is that they will not

10   oppose your request for placement in a particular facility.

11   And they won't take any position regarding whether or not you

12   qualify or you should be given the chance to participate in

13   those treatment programs.  The critical aspect is that they

14   have no control over this.  First of all, it will be up to

15   the sentencing court to decide whether or not to make a

16   specific recommendation for placement.  Normally it's

17   pro forma.  As sentencing judges we are more than willing,

18   unless there's some very specific reason not to, to go along

19   with a request for a particular placement.  But you

20   understand that ultimately all of that is up to the Bureau of

21   Prisons; they get to decide, all we can do is recommend?

22   A   I do, Your Honor.

23   Q   Take a look at paragraph 10, waiver of appeal.  It says,

24   "Defendant is aware that under 18 U.S.C. Section 3742 that

25   gives the right to appeal the sentence to be imposed, and

1    other federal statutes give the defendant the right to appeal

2    other aspects of the conviction.  In consideration of the

3    United States' agreement to a sentence below the advisory

4    guideline range, defendant knowingly and voluntarily agrees

5    to waive the following rights:

6          (a)   The right conferred under that statute to appeal

7    the sentence imposed by the court, including any restitution

8    order imposed and any term of supervised release imposed;

9          (b)   The right to appeal any aspect of defendant's

10   conviction, including any pre-trial suppression matters or

11   other pre-trial dispositions of motions and other issues;

12   and.

13         (c)   The right to bring any collateral attack against

14   defendant's conviction or sentence, except as it may relate

15   to the effectiveness of legal representation.

16         It concludes by saying that if defendant breaches the

17   plea agreement at any time by appealing or collaterally

18   attacking (except as to the effectiveness of legal

19   representation) the conviction or sentence in any way, the

20   United States may prosecute defendant for any counts that

21   were either dismissed or not charged pursuant to this plea

22   agreement.

23         Any questions about paragraph 10?

24   A    No, Your Honor .

25   Q    Take a look at paragraph 11.  It says, "As part of this

1    agreement the U.S. Attorney's Office for the Western District

2    of Washington -- agrees to move to dismiss the remaining

3    counts in the superseding indictment."  They also agree not

4    to prosecute you for any other additional offense known to

5    them as of the time of this agreement that are based upon

6    evidence in its possession at this time, and that arises out

7    of the conduct giving rise to this investigation.

8            Now you understand and recognize in the language that's

9    here, that the government has agreed not to prosecute all of

10   the criminal charges they believe the evidence establishes

11   were, in fact, committed by you, solely because of the

12   promises being made by you in this agreement.  You're

13   agreeing, however, that for purposes of preparing the

14   presentence report, the U.S. Attorney's Office will provide

15   U.S. Probation with evidence of all conduct committed by you.

16           You finally agree any charges to be dismissed before or

17   at the time of sentencing, that those were substantially

18   justified in light of the evidence available to the

19   government.  In other words, they were not vexatious,

20   frivolous, or taken in bad faith, and their dismissal will

21   not provide you with the basis for any future claims known

22   under what is the "Hyde Amendment."  Do you understand

23   everything in that agreement?

24   A   I do.

25   Q   Paragraph 12 brings me full circle of where we started

1   this whole colloquy with you, that is the voluntariness of

2   the plea.  That is, only you can make the decision, not the

3   government, not your attorneys, not anyone else.  It says

4   here, "The defendant has entered into this plea agreement

5   freely and voluntarily and that no threats or promises, other

6   than the promises contained in this plea agreement, were made

7   to induce defendant to enter these pleas of guilty."  Do you

8   agree?

9   A    I do.

10   Q    Is this your choice?

11   A    Yes, it is.

12   Q    Take a look at 13, statute of limitations.  It says that

13   in the event this agreement is not accepted by the court, for

14   whatever reason, or in the future you are in breach of the

15   terms, then the statute of limitations, that timeframe the

16   government has in which they must bring charges for any

17   specific criminal conduct, will be deemed to have been

18   tolled, that means stopped from running, from the date of the

19   plea agreement to 30 days following the date of

20   non-acceptance of that agreement by the court, or 30 days

21   following the date in which a breach of the agreement by you

22   is discovered by the U.S. Attorney's Office.

23        Any questions about the language of paragraph 13 or its

24   meaning?

25   A    No, Your Honor.

1    Q    Take a look at 14.  This refers to post-plea conduct.  It

2    says you understand the terms of this plea agreement apply

3    only to conduct that occurred prior to the execution of this

4    agreement.  If, after the date of this agreement, defendant

5    should engage in any type of illegal conduct, or conduct that

6    is in violation of his conditions of release or custody, and

7    examples of that could include but are not limited to

8    obstructing justice in some way, failing to appear for court

9    proceedings, other criminal conduct while awaiting sentence,

10   making false statements to either law enforcement agents,

11   pre-trial services officers, probation officers, or the

12   court, then the government would be free, under this

13   agreement, to ask that court to sentence you -- to seek a

14   sentence that takes such conduct into consideration.  Such a

15   sentence could include, to the extent the guidelines are

16   applicable, either a sentencing enhancement or upward

17   departure.

18        Is that understood?

19   A    That's confusing.  But I don't know how -- if the

20   government seeks that, does that invalidate the agreement?

21        THE COURT:  That's a wonderful question, Mr. Barbosa,

22   since this is an 11(c)(1)(C) plea.  Let's say he somehow

23   violates the terms as set out by this paragraph.  Does that

24   mean to you that you no longer are bound by the

25   recommendation of a very specific timeframe here, 216 months?

1        MR. BARBOSA:  Yes, I believe it does.  I believe if

2   he engages in additional criminal conduct or obstructive

3   conduct, it invalidates our -- he's violated the plea

4   agreement.  He's violated this particular provision of it and

5   we are no longer bound by that.

6        THE COURT:  Mr. Nance, Mr. Aoki, do you agree?

7        MR. NANCE:  Our position would be that if they could

8   prove a breach -- we think this is pretty academic -- but in

9   the event that they could, it would, in fact, negate the full

10  agreement, we'd be back at square one.  That's our position.

11  In other words, the agreement would be -- they could argue

12  he's breached it.  And if he has, there is no agreement.

13        THE DEFENDANT:  My concern is the language regarding

14  conditions of custody.  I'm currently held in the FDC, and I

15  have very little control over some of these things that

16  happen there.  And I've been sent to the hole for not making

17  my bed.  I don't know whether that -- does that breach the

18  agreement?

19  Q   (By the Court)  This is a pretty big disagreement, Mr.

20  Berg, that we need to resolve right now one way or the other,

21  and there's got to be a meeting of the minds of the two sides

22  before we can go.

23  A   It's certainly not worth -- I just wanted a clarification.

24  Q   Take a look at page 3 of your plea agreement, paragraph 3.

25  Remember when we went over the statutory penalties?

1    A    Um-hum.

2    Q    You're pleading guilty to three separate counts.  The

3    count with the highest statutory penalty is Count 9, wire

4    fraud, and that could be imprisonment for up to 20 years.

5    The court cannot impose a sentence greater than that.  It

6    would be an illegal sentence.  It cannot give you anything

7    more than 240 months.  You are agreeing, in fact requesting,

8    in fact binding the sentencing court to impose 216 months.

9    So what we're talking about is a 24-month potential swing

10   here.  Do you understand?

11   A    Um-hum.

12   Q    So if you were to violate the plea agreement as set out in

13   paragraph 14, the government is saying, well, we could ask

14   for up to 240 months as a result of that violation.  If he's

15   done other stuff that violates and breaches the plea

16   agreement, then we're not stuck to the 216, but they would be

17   stuck to the 240.  They can't go above that.  Your attorneys

18   are saying, no, we don't believe that, we don't agree with

19   that, we think that if he violates in some future way, well

20   then he's liable for any violations, whatever consequences

21   that might be, but that obviates the entire plea agreement;

22   we have no agreement at that point.  Is that your

23   understanding of the disagreement here?

24   A    Yes.

25   Q    All right.

1    THE COURT:  Mr. Barbosa, which way do you want to go?

2    MR. BARBOSA:  I stick to my original explanation.

3  Post-plea conduct is a standard term of our plea agreements.

4  One of the intentions there is if a defendant engages in

5  conduct that is in violation of various rules, including his

6  custody -- if he was on release, which he isn't, but a

7  typical example is an obstruction of justice, we would be

8  allowed to ask the court to take into account that activity.

9  I can't change my interpretation of that.  That only gives me

10  the right to bring it up to the court.  Bringing up an issue

11  to the court does not mean it actually carries any weight

12  with the court.  Often issues of seeming irrelevance, such as

13  failing to make the bed, do not impress upon the court too

14  much.  That's about the best I can say about that issue.

15    THE COURT:  I agree with you, Mr. Barbosa, in that is

16  the normal mechanism, and this is very standard language that

17  is used, except for 11(c)(1)(C) pleas.

18    MR. BARBOSA:  I took it out of our office's

19  11(c)(1)(C) plea agreement.  So I do not have authority to

20  remove that provision.

21    MR. NANCE:  I would just suggest, he certainly has

22  the right to bring it to the court's attention, but he's duty

23  bound to recommend the 18 years, unless he wants to withdraw

24  from the plea agreement.

25    THE COURT:  Mr. Berg, I have a suggestion.  Let me

1    see if your attorneys are willing to accept this because I

2    think it's an important one.  One, I like the fact that you

3    spoke up saying it was confusing, because then it really

4    assures me that you are tracking everything that we've been

5    saying.  And that's the primary, most important thing for me;

6    but two, it is confusing and I think we need to hammer it

7    out.  How about this.  This is an agreement between you and

8    the government, just like any other portion of this where it

9    says they will not oppose, they won't do this, right?  They

10   won't necessarily recommend, but they will not oppose, and

11   they take no position on another one.  What about if we agree

12   to disagree?  How about if we say the government believes the

13   language here says this, what he just said.  The defendant,

14   however, does not agree with that.  We'll leave it as an

15   issue for the sentencing court to deal with if this

16   hypothetical ever becomes a reality, and both sides have the

17   ability to argue their respective positions to the sentencing

18   judge, who can make a legal ruling.  And if the ruling should

19   go against you, you reserve your right to appeal that issue,

20   and solely that issue.  Gentlemen, how does that sound?

21        MR. BARBOSA:  Frankly, Your Honor, I think that is

22   the way any disagreement over the interpretation of the plea

23   agreement would be handled, would then become subject to the

24   rules of contract law and whether or not this is clear or

25   not, which it might not be.  I'm not conceding that at all.

1    But it's only an issue if one of these events even occurs.

2    So I think you were correct, this would be an issue for later

3    consideration by the assigned judge on the case.

4         MR. AOKI:  Your Honor, if I can address this issue.

5    Our concern is, and we worked very hard to hammer out this

6    11(c)(1)(C) agreement, and we would like to be able to

7    utilize the full strength of it by providing to the

8    sentencing court the discretion of what gets added or

9    doesn't.  What is in breach or not breached, what gets

10   potentially added to a sentence, I think circumvents our goal

11   today.  And I would propose that we agree to disagree, and

12   the decision be made by another judge other than the

13   sentencing court.

14        THE COURT:  Would you be willing to agree to let this

15   court make a decision if that should ever be an issue?

16        THE DEFENDANT:  Yes.

17        MR. AOKI:  That's fine, Your Honor.

18        THE COURT:  Mr. Barbosa?

19        MR. BARBOSA:  Is this a proposed addition to the plea

20   agreement that we're discussing?  Because I think if there's

21   any -- this is getting a little bit confusing, because we're

22   talking about agreements, and agreements to disagree.

23   Whatever happens here has to be part of the plea agreement;

24   according to Rule 11, there can't be any side agreements.  So

25   I am concerned about the potential for a future court seeing

1    this as the parties striking some side agreement.  The terms

2    of this plea agreement were negotiated very strenuously and I

3    just don't know if we can put anything else here that would

4    further clarify that.

5            MR. NANCE:  Your Honor, if I could have just a moment

6    with Mr. Barbosa.

7            THE COURT:  Absolutely.

8            MR. BARBOSA:  I think Mr. Nance has come up with a

9    good solution to this.  We will strike a portion of that

10   paragraph on page 9, the last line on the page.  Line 28

11   says, "...this agreement, defendant should engage in illegal

12   conduct," after that delete "or conduct that is in violation

13   of his/her conditions of release or custody."  And then keep

14   the items in parentheses which essentially outline all

15   illegal conduct.  That way we have an agreement fully

16   memorialized in the plea agreement.  There are no side

17   agreements.  Whatever discussions that occurred on the record

18   regarding interpretations of that are irrelevant, because the

19   agreement is fully written down.

20           THE COURT:  I like that better Mr. Barbosa.  I think

21   you're absolutely right about -- I was not ever intending to

22   do any side agreements of any type; anything we would do

23   would be memorialized as part of the agreement itself.  I was

24   trying to facilitate a mechanism for the parties to disagree.

25   But if you're willing to strike the language following the

1    last comma in line 28, the language that will be stricken

2    reads, "...or conduct that is in violation of his or her

3    conditions of release or custody.  Examples of which include

4    but are not limited to," and then just leave the rest of it?

5         Then I think the last sentence now reads, "If, after the

6    date of the agreement, defendant should engage in illegal

7    conduct, obstruction of justice, failure to appear for court

8    proceedings, criminal conduct while pending sentencing," et

9    cetera, the rest of it is fine.  Gentlemen, do agree with

10   that as well?

11        MR. BARBOSA:  We intended to keep the, "Examples of

12   which include, but are not limited to."

13        THE COURT:  Okay, I'm sorry.  "Defendant should

14   engage in illegal conduct, examples of which could include

15   but are not limited to," then leave the rest of it.  Is that

16   fine?

17        MR. NANCE:  That's fine.

18        THE COURT:  Mr. Berg.

19        THE DEFENDANT:  Yes.

20        THE COURT:  The exact language that will be stricken

21   is, "Or conduct that is in violation of his/her conditions of

22   release or custody."

23   Q    (By the Court)  All right.  Mr. Berg, paragraph 15 page 11

24   says, "The United States and defendant acknowledge that these

25   terms constitute the entire plea agreement between the

1    parties.  This agreement binds only the U.S. Attorney's

2    Office for the Western District of Washington.  It does not

3    bind any other U.S. Attorney's Office or any other office or

4    agency of the United States, or any other state or local

5    prosecutor."  Do you agree with the language of paragraph 15?

6    A    One moment.

7              (Defendant confers with his attorneys.)

8    A    Yes.

9    Q    You understand what that means, literally that this

10   agreement is between you and this attorney, U.S. Attorney's

11   Office here.  If there's another U.S. Attorney's Office or

12   any other prosecuting agency out there that feels they have

13   sufficient evidence to proceed against you and the desire to

14   do so, that will be up to them.  Do you understand?

15   A    On the same charges?

16   Q    On the same basis, the same facts.

17   A    Yes.  I understand.

18   Q    I'm looking at the signature page signed by Mr. Barbosa,

19   Mr. Westinghouse, also another Assistant United States

20   Attorney; Mr. Nance, Mr. Aoki; there's a signature in blue

21   ink dated 8/2/11 above the printed line that says Frederick

22   Darren Berg, did you sign and date this agreement?

23   A    Yes, Your Honor, I did.

24   Q    Are you acknowledging by that signature that you believe

25   and you understand that this agreement, as changed in our

1  discussion, constitutes the plea agreement between you and

2  the United States Government?

3  A   Yes, Your Honor, I do.

4  Q   Do you have any questions about it at all?

5  A   No further questions.

6  Q   All right.  Then let me ask you the final question I have.

7  And that's keeping in mind the consequences of your plea,

8  keeping in mind the rights you give up by pleading guilty,

9  how would you like to plead to wire fraud as charged in Count

10  9; money laundering as charged in Count 11; and bankruptcy

11  fraud asset concealment as charged in Count 12, all under

12  violation of Title 18.  Would you like to plead guilty or not

13  guilty?

14  A   Guilty, Your Honor.

15       THE COURT:  Mr. Barbosa, is there any legal reason

16  that you can think of, counsel, why the court should not

17  accept the pleas of guilty?

18       MR. BARBOSA:  No.  Your Honor.

19       THE COURT:  Mr. Nance, Mr. Aoki.

20       MR. NANCE:  No, Your Honor.

21       MR. AOKI:  No, Your Honor.

22       THE COURT:  Gentlemen, I agree.  Mr. Berg certainly

23  is intelligent enough to understand what we've been

24  discussing and reviewing this afternoon.  He asked questions

25  that were not only pertinent but very pointed about very

1   esoteric issues, conflicts in the proposed plea agreement

2   before changed by the court.  The court is satisfied that his

3   plea of guilty is made knowingly, voluntarily and most

4   importantly that it is willingly done.  The court finds there

5   is a sufficient factual basis that satisfies the elements of

6   the three counts that he is entering pleas of guilty to.

7        The court will accept his pleas of guilty to wire fraud as

8   charged in Count 9; money laundering as charged in Count 11;

9   and bankruptcy fraud asset concealment as charged in Count

10  12.

11       Madame clerk, do we have a sentencing date from Judge

12  Jones' chambers?

13            THE CLERK:  Yes, we do.  Sentencing will be

14  November 4th at 9:00 a.m. before Judge Jones.

15            THE COURT:  Mr. Berg, let me tell you what will

16  happen between now and then.  In preparation -- the reason

17  why it's set out at that time, not only is that the time

18  given to us by Judge Jones' chambers, but the reason that

19  that lengthy time is needed is because presentence reports

20  are prepared for the court, one by the government, one by

21  your counsel, and one by United States Probation.  Probation

22  is an independent branch.  They're part of the court system.

23  They will ask to interview you.  That interview will be

24  lengthy.  It can certainly take place in the presence of your

25  counsel, if you wish.

1    After they interview you, they will put it in written form

2  and draft form, that will be given to counsel, both the

3  government and to you, prior to the November 4th sentencing

4  date.  You and the government have the ability to make

5  objections to that proposed presentence report prepared by

6  probation.  After those objections are made, the final report

7  is prepared.  Whether it's changed or not is up to the

8  individual probation officer signing off on it.  But it will

9  be presented to Judge Jones, as well as the other presentence

10  reports prepared by counsel.  Judge Jones then takes all

11  those presentence reports, reviews them, and that's how he

12  gets to the sentence.

13    This is an 11(c)(1)(C), which means he doesn't have any

14  choice in that number, the only choice he has is either to

15  accept the plea agreement and go with it, or to reject it

16  entirely, in which case both sides go to square one.  Any

17  questions at all?

18        THE DEFENDANT:  No, Your Honor.

19        THE COURT:  Mr. Barbosa, anything further that we

20  need to do today?

21        MR. BARBOSA:  No, Your Honor.  Thank you very much.

22        THE COURT:  Mr. Nance, Mr. Aoki, anything further at

23  all?

24        MR. AOKI:  No, Your Honor.

25        MR. NANCE:  No, Your Honor.

1       THE COURT:  Gentlemen, I know this wasn't easy.  And

2   Mr. Berg, I know this wasn't easy from your perspective as

3   well.  But as I said earlier, both of your attorneys are two

4   of the best criminal defense lawyers I've ever seen practice

5   in front of me.  Mr. Nance still holds the record in my court

6   for getting a not guilty plea on what was a slam dunk case

7   for the prosecution.  But that doesn't always happen.  And

8   there's an old adage in the law that says:  The only bad plea

9   is the one you walk away from.  Hopefully this is a good

10  result for you.  Good luck, all right?

11      THE DEFENDANT:  Thank you, Your Honor.

12      THE COURT:  We'll be at recess, gentlemen.

13                   C E R T I F I C A T E

14

15

16   I certify that the foregoing is a correct transcript from

17  the record of proceedings in the above-entitled matter.

18

19

20  /s/ Debbie Zurn                    May 30, 2013

21  Debbie Zurn, Court Reporter              Dated

22

23

24

25